[Civil No. 2495. Filed October 5, 1926.]

[249 Pac. 751.]

# GILA WATER COMPANY, a Corporation, and F. A. GILLESPIE, Appellants, v. GILA LAND & CATTLE COMPANY, a Corporation, Appellee.

1. APPEAL AND ERROR.—Jury's finding on conflicting evidence as to extent of normal flow of river, in action involving water rights, *held* binding on appeal.

2. DAMAGES.—Damages to perennial crop, such as alfalfa, from unlawful conversion of water is not limited to the value of one cutting, the one growing when water is stopped.

3. EVIDENCE.—Witnesses who testified that they were acquainted with plaintiff's lands and with rental value of similar lands *held* qualified to testify as to rental value of plaintiff's land.

4. EVIDENCE.—Preliminary question of witnesses' competency is for trial court.

5. APPEAL AND ERROR.—In action for damages for conversion of water in river to which plaintiff was entitled, exclusion of evidence of condition of river at times prior to year involved *held* not prejudicial.

6. TRIAL.—Refusal of requested instructions covered by others given is not error.

7. WATERS AND WATERCOURSES.—That water to which plaintiff was entitled would not flow to plaintiff's dam or be available for use on its lands, if allowed to pass defendants' dam, *held* no defense to action for conversion thereof.

8. WATERS AND WATERCOURSES.—Instruction that defendants were not liable if they allowed water to which plaintiff was entitled to pass their dam, and it was appropriated by others before reaching plaintiff's diversion point, *held* unwarranted by evidence.

9. WATERS AND WATERCOURSES. — In action against corporation and majority stockholder and director for conversion of water, evidence *held* sufficient to go to jury on question of individual defendants' liability for actual or punitive damages.

10. CORPORATIONS.—Officer of corporation directing and controlling its operations is individually liable for torts of corporation done under his authority or with his approval.

---

3. See 10 Cal. Jur. 1022, 1024; 11 R. C. L. 638.
4. See 27 Cal. Jur. 43.
10. See 7 R. C. L. 504.

11. CORPORATIONS.—Officer of corporation is not liable for torts of principal merely because of his office or interest as stockholder.

12. WATERS AND WATERCOURSES.—In action for conversion of water, evidence showing a prior conversion and disregard of plaintiff's rights *held* to justify submission of question of punitive damages.

13. DAMAGES.—"Exemplary," "punitive" and "vindictive" damages mean practically same thing, and are inflicted for purpose of punishment, and only when compensation seems inadequate to satisfy wrong committed.

14. DAMAGES.—Generally, damages for tort must be the legal, natural and proximate consequences of act complained of.

15. DAMAGES.—Exemplary damages cannot be recovered for mere negligence without malice, fraud or gross negligence.

16. WATERS AND WATERCOURSES.—In action for conversion of water in unlawful, wrongful and wilful disregard of plaintiff's rights, requested instruction affecting exemplary damages in cases of negligence or fraud *held* inapplicable and properly refused.

See (1) 4 **C. J.**, p. 858, n. 3.  (2) 17 **C. J.**, p. 891, n. 47.  (3, 4) 22 **C. J.**, p. 523, n. 93, p. 695, n. 48, p. 696, n. 51.  (5) 4 **C. J.**, p. 1004, n. 63.  (6, 7) 38 **Cyc.**, p. 1711, n. 19; 40 **Cyc.**, p. 816, n. 80.  (8) 40 **Cyc.**, p. 816, n. 80.  (9–11) 14a **C. J.**, p. 175, n. 78, p. 176, n. 83 New, p. 180, n. 32; 40 **Cyc.**, p. 816, n. 80.  (12–15) 17 **C. J.**, p. 712, n. 49, p. 729, n. 11, p. 750, n. 23, p. 968, n. 70, p. 986, n. 7; 40 **Cyc.**, p. 816, n. 80.  (16) 40 **Cyc.**, p. 816, n. 80.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Dudley W. Windes, Judge. Affirmed.

Mr. W. L. Barnum, for Appellants.

Messrs. Sloan, Holton, McKesson & Scott, for Appellee.

11. Personal civil liability of officer to person injured by tort of corporation, see notes in **Ann. Cas.** 1913D 1058; 28 **L. R. A.** 421. See, also, 7 **R. C. L.** 504.

13. Exemplary or punitive damages, when allowable, see notes in 27 **Am. Dec.** 684; 28 **Am. St. Rep.** 870. See, also, 8 **Cal. Jur.** 864; 8 **R. C. L.** 581.

14. See 8 **Cal. Jur.** 766.

15. Rules respecting the allowance of exemplary damages, see notes in 50 **Am. Dec.** 767; 101 **Am. St. Rep.** 732. See, also, 8 **Cal. Jur.** 873; 8 **R. C. L.** 588.

Necessity for actual malice to justify exemplary damages for tort, see note in 16 **L. R. A.** (**N. S.**) 440.

ROSS, J.—The appellee Gila Land & Cattle Company, hereinafter called the plaintiff, brought this action against the appellants Gila Water Company and F. A. Gillespie, its president, hereinafter called defendants, to recover damages alleged to have been suffered by reason of the defendants' wilful, unlawful and wrongful acts in depriving plaintiff of the use, during the growing season of June, July, August and September, 1924, of irrigating water, to which plaintiff was entitled by virtue of a decree of the superior court of Maricopa county, rendered in 1922, in an action between the corporation parties.

It was alleged in the complaint that the defendant Gillespie owned a majority of the outstanding stock of defendant company; was a member of its board of directors and its president; and, as such, personally directed or dictated the wilful, unlawful and wrongful diversion of plaintiff's irrigating water. It is further alleged that defendants' acts were in utter disregard of plaintiff's rights.

The defendant Gila Water Company in its separate answer admitted that a court decree theretofore made and entered had established the plaintiff's prior and superior right to twelve cubic feet flow per second of the normal flow of the waters of the Gila River, or so much thereof as was necessary for the proper irrigation of plaintiff's lands under reasonably efficient means for diversion and carriage. It admitted it took all of the normal flow in river from July 1st, but alleged it was under a permission or authority from plaintiff's officers; denied it diverted during the season "any water which the plaintiff was entitled to have, receive, or divert from said Gila River at plaintiff's point of diversion."

Defendant Gillespie's answer was a general denial.

The case was tried with a jury, whose verdict was in favor of plaintiff and against both defend-

ants for $24,450 actual damages, and $5,000 punitive damages, upon which judgment was duly entered.

The appeal is from the order refusing a new trial and from the judgment.

The main controversy at the trial was as to whether the defendants had violated the decree of 1922. It is true defendant Gillespie's general denial put in issue plaintiff's rights as settled by the decree, but upon the trial neither defendant questioned the finality and conclusiveness of plaintiff's prior and superior right to the quantity of water decreed to it providing it was necessary to the proper cultivation of plaintiff's land, but concentrated their whole effort in an endeavor to show that the normal flow at their dam did not amount to twelve cubic feet per second, or, if at any time it did, it was permitted to pass their dam. It was in evidence that very much more than twelve cubic feet flow per second reached defendants' dam during all the times in question, but defendants claimed, and undertook to show, that this water was not of the normal flow of the river, but was water they had developed by their subsurface dam or had bought from the Salt River Valley Water Users' Association, delivered at points along the Salt and Gila Rivers, many miles above defendants' land, and conveyed to it in the natural beds of such rivers. The question as to whether the water that reached defendants' dam was of the normal flow, and the percentage thereof, was the subject of much testimony, expert and nonexpert, and the conflicts therein were resolved by the jury in their verdict in favor of plaintiff's contention that twelve cubic feet flow per second, or more of it, was of the normal flow, and this verdict, as we have uniformly held, is binding upon the court. There appears to have been no contention on the trial that plaintiff did not need

the water for the irrigation of its land, nor that it obtained it.

The only remaining questions on the merits are those concerning the damages and the responsible party therefor. Before taking up these questions, however, we will consider the defendants' assignments based upon the admission and rejection of evidence, the instructions given and refused. The defendant Gila Water Company has made in its brief twenty-five, and defendant Gillespie in his brief thirty-one, assignments. They are largely the same, and what we shall say applies generally as well to one as to the other.

Fifteen of the assigned errors, 8 to 22, inclusive, are directed to the admission of evidence over objection or refusal to strike on defendants' motion, or the rejection of evidence offered by defendants. The defendants have not argued these separately, but as groups or classes, nor have they pointed out, except in a general way, why evidence objected to was improperly admitted or that offered improperly rejected. For instance, in assignment No. 8, the witness was permitted to give his opinion as to the number of cuttings of alfalfa, if water had been applied the latter part of June, and also the yield per cutting. Just why the admission of this testimony was error we are not told. We can infer from what is said about like testimony of another witness that defendants' contention is that plaintiff's damages under the law where the crop is a perennial, such as alfalfa, are limited to the value of one cutting, the one growing when the water is stopped. We are cited to no authority for such a proposition, and do not believe any exists.

Testimony as to the rental value of some of plaintiff's lands is made the subject of assignments, on the ground that witnesses were not qualified. We think the evidence was sufficient to permit their

testimony; they having testified to being acquainted with such lands and with the prevailing rental value in the Salt River Valley of lands of similar character. The preliminary question of their competency was for the trial court.

Error is assigned upon the court's excluding evidence of the condition of the Gila River at times prior to 1924. But the defendants did not advise the court at the time of offering this evidence the purpose for which it was tendered, or how it could affect the question. of the condition of the river during 1924. If the purpose was to show that in previous years, no drier than 1924, there had been little normal flow in the river at defendants' dam, it probably should have been admitted, but, as that question was fairly understood and developed in the course of the trial, the exclusion of the offer could hardly have prejudiced the defendants.

From what we have heretofore said, it is apparent the refusal of the court to instruct a verdict for defendants was not error. The instructions asked by defendants and refused by the court were either erroneous or fully covered by the instructions given to the jury. Of the former kind is one to the effect that defendants were under no obligation to let the normal flow of the river pass their dam, if it would not flow to plaintiff's dam and be available for use "on its lands up to and including the amount of twelve second feet." This, of course, is unsound; the decree adjudging plaintiff's rights being "that whenever the normal flow of said river at defendants' dam is less than twelve second-feet the defendant shall not be required to permit any water to pass over its dam."

Two other instructions refused were predicated upon the assumption that, if defendants let pass their dam sufficient water to irrigate plaintiff's lands, and it was diverted by others before it reached

plaintiff's diversion point, defendants would not be liable. These instructions doubtless state a correct abstract rule, but the defendant has failed to point out in the record the evidence justifying the request. It is shown that the Enterprise ranch took water from the river below dam and above plaintiff's point of diversion, but there is no evidence, or at least none has been called to our attention, showing the water it took was water belonging to plaintiff.

The instruction asked, but refused, to the effect that defendants did not have to let pass their dam water developed by their subsurface dam, or bought of the Water Users' Association, was fully covered by the court's general instructions.

This brings us to the instructions given of which complaint is made. It is most earnestly insisted that the evidence did not justify the court in submitting to the jury the question of actual damages against defendant Gillespie or of punitive damages against either of the defendants. As to the first of these propositions, we think it is very well settled that an officer of a corporation who directs and controls its operations is equally liable for the commission of torts by the corporation done under such officer's authority or direction or with his approval. In such circumstances the officer is regarded as a joint tort-feasor. *Robinson* v. *Moark-Nemo Cons. Min. Co.,* 178 Mo. App. 531, 163 S. W. 885; Id. (Mo. Supp.), 196 S. W. 1131. An officer of the corporation is not, however, liable for the torts of his principal merely because of his office or interest as a stockholder. *Folwell* v. *Miller,* 145 Fed. 495, 7 Ann. Cas. 455, 10 L. R. A. (N. S.) 332, 75 C. C. A. 489.

Defendant Gillespie contends the evidence shows nothing against him, except the fact he was the president of the defendant company and a stockholder thereof; that it shows he was not in Arizona during the time the tort is alleged to have taken

place, and knew nothing whatever of it; that he had instructed his subordinates "to see that the plaintiff received all the water to which it was entitled"; that the waters were diverted by Goodman, defendant company's engineer, under the direction of Smith, assistant manager; and that he had nothing whatever to do with it. These facts, if they stood alone with no conflict or impeaching inferences, would doubtless acquit defendant Gillespie of any participation in the tort or liability therefor. The facts tending to refute defendant Gillespie's contention are: That he was the president, general manager, and a large stockholder of defendant company; that he and his family owned practically all of the stock, and dictated the appointment of the board of directors; that he knew the history of the company; and had followed its transactions very closely since 1919; was familiar with the decree of 1922 which awarded plaintiff twelve cubic feet flow per second of the normal flow of the Gila River, as against his company; knew of the litigation between plaintiff and defendant company wherein defendant had been sued for converting plaintiff's water during years previous to 1924 (*Gila Water Co.* v. *Gila Land & Cattle Company*, 28 Ariz. 531, 238 Pac. 336); had frequent reports from, and conferences with, his assistant manager, W. T. Smith, about the business and affairs of the company; knew the plaintiff was complaining of not getting the water it was entitled to, and that it was blaming his company with taking it; had a letter of date June 26, 1924, from an officer of plaintiff company in which he was informed the greater part of the water decreed plaintiff was being diverted from the Gila River into defendants' canal, and which letter he says he did not answer "because he hadn't done anything down there personally, and didn't think it needed an answer." W. T. Smith, the assistant manager, testifying as to his reports

to, and conferences with, defendant Gillespie, said he saw Gillespie several times in 1924, and "told him everything of importance."

The court did not err in refusing defendant's motion for a directed verdict at the close of plaintiff's case on the ground that the evidence failed to show he had participated in, or been instrumental, directly or indirectly, in diverting any water from plaintiff. We think the evidence was ample to justify the submission of the question as to whether defendant Gillespie actively participated in, or assented to, or directed the infliction of, the wrongs and injuries complained of, and that the court correctly submitted that issue to the jury.

It is urged that there was no evidence justifying the submission of the question of punitive damages to the jury, and that the court erred in doing so. Exemplary, punitive and vindictive damages mean practically the same thing, and comprehend damages inflicted upon a party over and above actual damages for the purpose of punishment and as a deterrent, and are allowed only when compensation seems inadequate to satisfy the wrong committed. 8 R. C. L. 581, § 129. The general rule is that the damages for which a plaintiff may recover in tort cases must be the legal, natural and proximate consequences of the act complained of. *Ingram* v. *Rankin*, 47 Wis. 406, 32 Am. Rep. 762, 2 N. W. 755. It is only when there is superadded to the legal wrong some conduct or action showing a reckless or wanton disregard of the rights of others that punitive damages are allowed. We have held such damages may not be recovered for mere negligence, and that, where the evidence evinced no malice, fraud or gross negligence, the measure of damages was reasonable compensation. *Jenkins* v. *Skelton,* 21 Ariz. 663, 192 Pac. 249.

The basis of the present action is conversion; that is, it is shown the defendants took and converted plaintiff's property, to wit, its irrigation water, at a time when plaintiff needed it to irrigate its lands for the purpose of growing crops. The jury found plaintiff's contention to be true. The question is, Was the taking and converting of plaintiff's water done with a reckless disregard for, or a wilful indifference to, the rights of plaintiff? If from the evidence it may reasonably be concluded or inferred that defendants assumed the attitude of intending to take plaintiff's water, deeming it sufficient justification that they were able to pay any damages that might result therefrom if it should be ultimately determined they had no right to such water, then the question of punitive damages was properly submitted to the jury. If, on the other hand, the evidence will not support such a conclusion, but shows defendants acted in good faith in taking plaintiff's water, honestly believing it to be theirs, then the law would not punish them for their mistake or error of judgment, and in such case the question should not have been given to the jury.

It seems the defendants had control of the situation at their dam, and could let plaintiff's water pass, or could divert it to their canal for use on their lands, just as they saw fit, because of the difficulty of distinguishing, admeasuring, and separating the normal flow at that point from developed and bought water admittedly belonging to defendants. If this were the first time defendants had been charged with violating plaintiff's rights, we would be disinclined to approve of the submission of the question of punitive damages to the jury. But it appears that this trespass is the second one that has reached this court after the rights of plaintiff in a suit against the defendant company had been adjudicated and established by a court decree. Under such circumstances, we think the court

properly submitted the question to the jury to determine whether the defendants' act was wilful and in reckless disregard of plaintiff's rights, or whether defendants acted in good faith believing they were entitled to use the water they took. The court submitted the question in that form.

The case of *Hall Oil Co.* v. *Barquin*, 33 Wyo. 92, 237 Pac. 255, very fully discusses the question of punitive damages and when they may be recovered in trespass cases. The court cites and reviews cases from all parts of the country, and we think the rule we have here adopted is amply supported by that authority.

The defendant water company requested an instruction upon the question of punitive damages, and the ruling refusing it is assigned as error. The instruction is in the following language:

"In order that there may be a recovery of exemplary damages, there must be present in the circumstances some element of malice, fraud, or gross negligence, otherwise the measure of damages in such an amount as will constitute a just and reasonable compensation for the loss sustained, and nothing more. In other words, the wrongs to which exemplary damages are applicable are those which besides violating a right and inflicting actual damages, import insult, fraud or oppression and are not merely injuries, but injuries inflicted in a spirit of wanton disregard of the rights of others."

This instruction under some circumstances might be eminently correct, but it was not applicable to the facts of this case. The defendants' act is not charged in the complaint as negligent or fraudulent, but as unlawful, wrongful and wilful, and in utter disregard of plaintiff's rights, and the instruction given by the court followed the pleading. The court's instruction was:

"  . . . And you further find from the evidence that such diversion by defendants was wilful, wanton and oppressive, that is to say, with the knowledge on their part that they were diverting or causing to be diverted from said river water to which plaintiff was entitled under said decree and with the knowledge that plaintiff was being injured thereby by being deprived of water needed for the irrigation of its lands, and which (it) was entitled to, then I charge you, in addition to the actual damage the plaintiff may have suffered, you would be entitled under the law . . . to find what we call a punitive or exemplary damage."

It is said in 8 R. C. L. 588, section 132:

"Wilfully to commit a trespass upon the rights of an individual is of itself sufficient to permit the awarding of punitive damages, though committed on but one single occasion; and especially may such damages be awarded when the trespass is repeated. Thus, where a recovery has once been had for a nuisance, and it is continued, exemplary damages are allowed as a matter of course upon a second successful suit, on the ground that the continuance of the nuisance after damages are once recovered shows a wanton and wilful invasion of another's right."

Repeated diversions of plaintiff's water, preventing it from carrying on its farming, is not unlike, in principle, repeating or continuing a nuisance. The wilful knowledge of the wrong being committed is as obvious in the one case as in the other.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.