297 P.2d 339

Edward M. DOWNS, Appellant and Cross-Appellee,

v.

SULPHUR SPRINGS VALLEY ELECTRIC COOPERATIVE, Inc., a corporation, Appellee and Cross-Appellant.

No. 5945.

Supreme Court of Arizona.

May 15, 1956.

Conner & Jones, and James M. Murphy, Tucson, Gentry & Gentry and James F. McNulty, Jr., Bisbee, for appellee and cross-appellant.

Daniel E. Moore, Bisbee, for appellant and cross-appellee.

WINDES, Justice.

Wrongful death action wherein plaintiff Edward M. Downs brought suit against defendant Sulphur Springs Valley Electric Cooperative, Inc., a corporation, to recover damages for the death of plaintiff's eleven-year-old son, Edward Holt Downs. After trial before a jury resulting in verdict and judgment in the sum of $7,500, plaintiff appeals and defendant cross-appeals.

Defendant is a cooperative furnishing electrical power to its members and maintains a power plant yard at McNeal, Arizona. The premises was enclosed by a four-foot-high metal link fence with an open gateway and located thereon was a building containing a generating plant; a substation consisting of transformer which was enclosed within an eight-foot fence; and outside this enclosure an automatic circuit breaker connected with the substation. The automatic circuit breaker which was not fenced consisted of a sixty-foot-high framework beneath which were three tanks of oil installed in a separate steel framework and suspended off the ground. Atop this latter framework and some distance above the oil tanks was an orange-colored glass cap used as a gauge to determine the amount of oil in the tanks. Electrical power was transmitted through the oil breaker to the transformer. The lowest point on the automatic circuit breaker at which electrical energy could be contacted was twelve feet from the ground. The breaker was capable of handling 69,000 volts but was receiving only 44,000 volts at the time of the accident which resulted in the child's death.

Plaintiff was an employee of defendant and with the exception of a two-year period had been so employed since 1942 and was employed in November, 1952, as a diesel operator. Plaintiff had two children of school age and occasionally, when plaintiff's wife was not at home, it was the practice for these children to come to the plant and wait for their father to go off duty.

On the afternoon of November 4, 1952, plaintiff was on duty at the generating plant and his wife was working on an election board. When school was out, the children came to the plant. Plaintiff was working inside the building. On two occasions he looked out and observed the children, together with children of persons who lived near the premises, playing in the area near the substation and automatic circuit break-

er. He could hear them playing in the yard. He did not warn them away from the equipment.

A little after 5:00 o'clock p. m. after plaintiff had checked the meters, the alarm sounded indicating a short circuit. Plaintiff ran outside to find his son lying on the ground unconscious, his clothes burning. The boy was immediately taken to the hospital in Douglas where he died the following day.

According to the children playing with decedent, they had been playing among wire spools and other equipment on the premises. Three of the children including decedent started to climb upon the automatic circuit breaker "to find out what was in the glass jars up there". There was a sudden flash, "like a rainbow" and decedent fell to the ground. The flash burned the face of one of the other children who felt a shock and jumped to the ground.

Plaintiff testified that he had instructed his son about the dangers of electricity and on occasion had the boy working with him installing an electrified fence and working on electrically operated water pumps. The boy had been warned by his father not to go in or around the substation.

■ Defendant's cross-appeal is based upon the contention that the sole cause of the death of the child was the act of plaintiff in introducing or exposing the child to a dangerous instrumentality. The correct answer is dependent upon whether under the evidence the jury could legally find that the defendant was negligent and, if so, whether the jury was authorized to find that such negligence was a proximate cause of the death. Whether the defendant was negligent calls for an application of the law measuring the extent of liability of one who maintains on his premises an artificial condition or instrumentality inherently dangerous to small children who might be tempted to intermeddle or tamper therewith. Such a situation is said to create an attractive nuisance.

■ The decisions in various jurisdictions cannot be entirely harmonized. There is no occasion, however, for confusion or much disagreement if the problem is approached and tested by the ordinary rules of law applicable to negligence. Negligence is simply determined by whether under the conditions then and there existing one should realize there is or should be anticipated an unreasonable risk of harm to one in the position of the injured person. When determining whether liability should be imposed under the so-called attractive nuisance doctrine, we should inquire what is the extent of the probability of resulting injury and the practicability of protection to obviate the same. If one maintains on his premises an artificial, dangerous instrumentality under such conditions that he as a reasonable person should anticipate the access of children who would not realize the dangers involved and should anticipate that there is an unreasonable risk that the in-

strumentality would tempt or entice the child to trespass by tampering, playing or intermeddling therewith and that there is an unreasonable risk of harm resulting from such trespass, he is negligent, unless to provide protection against the harm would involve serious interference with the owner's use of his premises or would entail unduly burdensome costs. A good illustration of the circumstances under which an inherently dangerous condition may be legally maintained without protective devices to obviate injury or death to children is found in the case of Salladay v. Old Dominion Copper Min. Co., 12 Ariz. 124, 100 P. 441.

■ There was evidence from which the jury could find that the defendant knew or should have known that small children who did not realize the danger might play in and around the circuit breaker which was capable of being climbed to a point of danger. There was evidence from which the jury could say that a reasonably prudent person should have realized that such children would be enticed to climb and play upon the same; that if they did, there was an unreasonable risk of injury to them and that such risk could have been obviated without interference with the use necessarily being made of the premises or without unduly burdensome difficulties or expense. The jury could further find that the decedent climbed to the place of his injury by reason of having been attracted to the circuit breaker and that he did not appreciate the dangers involved. It follows, therefore, that the jury were legally justified in finding that the defendant was negligent.

■ With evidence from which the jury could find the defendant negligent and assuming that the evidence likewise establishes that the plaintiff in bringing the child to the premises which resulted in his being exposed to the hazard was also negligent and the concurrence of the two acts of negligence were the proximate cause of the death of decedent, the question of contributory negligence would have to be submitted to the jury. Under such conditions, Article XVIII, § 5, Arizona constitution, deprives the court of the power to say as a matter of law there was contributory negligence. Campbell v. English, 56 Ariz. 549, 110 P.2d 219. The court correctly submitted this question to the jury.

The complaint alleged wilful and wanton negligence and asked for punitive damages. Prior to answering, defendant moved to strike this portion of the complaint which motion was denied. At the beginning of the trial the motion was renewed and denied. When the evidence was in, the motion was again renewed and was granted, and the jury was instructed that no punitive damages could be recovered. Plaintiff says that he has been illegally prejudiced for the reason that under the law and the evidence he is entitled to have the jury pass upon this question and for the further reason that the motion to strike which was granted was not timely made.

Whether the law authorizes an award of exemplary damages in a wrongful death case is dependent upon the correct construction of pertinent statutory and constitutional provisions. At one time our statute expressly allowed punitive damages in a wrongful death action. Section 2147, Revised Statutes of Arizona 1887, Civil Code. Later this provision was removed. Section 2766, Revised Statutes of Arizona 1901, Civil Code. Such was the statute at the time of adoption of the Arizona constitution and to the present time. Embodied in the constitution when adopted was Article II, § 31, which provides that no law be enacted limiting the amount of damages to be recovered for causing the death or injury of a person.

■ The general rule is that unless the statute expressly or by clear implication confers the right to such exemplary damages, none can be recovered in an action for wrongful death. Annotations 94 A.L.R. 384 and 14 A.L.R.2d 538; Restatement of Law, Torts, section 925, comment 4(c).

■ Since our statutes at one time expressly allowed exemplary damages and thereafter it was eliminated, we must say there can be no implication that the present statute confers the right to this kind of damages in a death action. It shows a clear intention of the legislature to not allow the same. Lange v. Schoettler, 115 Cal. 388, 47 P. 139. In that case the California statute provided for the recovery of such damages as under all the circumstances may be just.

Our statute provides for the recovery of such damages as the jury may deem fair and just. Section 31-103, A.C.A.1939, A.R.S. § 12-613.

If plaintiff is to sustain his position that he is entitled to have the jury pass upon this question, he must acquire that right from the foregoing constitutional provisions. Article II, § 31. The effect of plaintiff's argument as we understand it is that since under this constitutional provision the legislature cannot pass a law limiting the amount of damages recoverable for wrongful death, we must construe the law as allowing punitive damages because to do otherwise would be the equivalent of allowing the law to limit the amount of damages which may be recovered and thus offend the constitution. In other words, he says that the word "damages" as used includes both compensatory and punitive damages. In support of this contention we are cited to Louisville & N. R. Co. v. Kelly's Adm'x, 100 Ky. 421, 38 S.W. 852, 40 S.W. 452. That case is not persuasive for the reason that Kentucky is one of the few states that considers punitive damages are compensatory whereas this court is committed to the general rule announced in 15 Am.Jur., Damages, section 266, page 700, that this class of damages is allowed as punishment. Gila Water Co. v. Gila Land & Cattle Co., 30 Ariz. 569, 249 P. 751.

■ Article II, of which the provision under consideration is section 31, is under the heading of "Declaration of Rights." It

must be construed, therefore, as declaring some right in favor of those damaged by wrongful death which is immune from legislative impairment. Plaintiff would have us say that the right thus conferred is not only to be assured of full and complete compensation for the actual damages sustained but to be also entitled to punitive damages. Our view is that this is not the correct interpretation of this provision. When dealing with words of this character in a constitution which is adopted by a vote of the people they should be given the meaning most common to the ordinary individual. 11 Am. Jur., Constitutional Law, section 65, page 680. The most common meaning of damages is compensation for actual injury. Such a rule is necessary because the object of construction is to give effect to the intent of the people in adopting the constitution and no forced or unnatural construction should be given such words. 1 Cooley, Constitutional Limitations, pages 124–131.

Punitive damages are allowed on grounds of public policy and public benefit but not to compensate for actual injury. 15 Am.Jur., Damages, section 266, page 700. In the absence of constitutional or statutory mandate, there is no legal right of an individual thereto. Under certain conditions there is the legal right to give the triers of fact the opportunity to assess such damages by reason of the gravity of the offense but the jury cannot be required to make such assessment. 15 Am.Jur., Damages, section 269, page 705; Restatement of Law, Torts,

section 908. We do not believe that section 31, Article II of the constitution by preventing the limitation of actual damages was intended to confer the right to punitive damages.

The plaintiff states that defendant is a public service corporation and that under the provisions of section 69–254, A.C.A. 1939, A.R.S. § 40–423, plaintiff is given the right to punitive damages. That section imposes liability upon public service corporations for doing anything forbidden or declared to be unlawful or failing to do anything required to be done and provides that if the court finds the act or omission was wilful, it may assess exemplary damages. This court has ruled that in a tort action based on negligent conduct, the statute merely reaffirms and reiterates the common law liability. Cole v. Arizona Edison Co., 53 Ariz. 141, 86 P.2d 946. Without deciding whether the defendant is or is not a public service corporation, we do not believe the legislature intended to establish a rule allowing punitive damages in a death case when a public service corporation is the wrongdoer and not allow such damages as against all other corporations and individuals. We think it would be most unreasonable to attribute to the legislature an intention to single out only public service corporations as the ones against which exemplary damages would be allowed in death cases.

Our view is that the court properly took from the jury the right to assess exemplary damages. In this connection

there are various assignments of error concerning procedure in that the court first denied defendant's motion to strike the allegations of the complaint concerning wilful and wanton conduct and then before submitting the case to the jury struck such matters. Since under the law plaintiff was not entitled to punitive damages no possible evil could result from the manner in which the subject matter was taken from the jury.

The trial court gave the jury the usual instruction that the damages were measured by what the child would have accumulated as an estate had he lived his normal life expectancy. The court further instructed the jury, after arriving at such amount, to reduce that figure to its present worth, telling the jury how to calculate such present worth. Plaintiff contends the court should not have instructed that the estate which would have been accumulated should be reduced to present worth. In this respect the court committed no error. The generally recognized rule in death actions, when measuring the damages by possible future accumulations or benefits that in the absence of the untimely death would have accrued only at a time subsequent to trial, is that the verdict should reflect the present worth of such future accumulation or benefit. 16 Am.Jur., Death, section 202; Annotations 154 A.L.R. 796 and 14 A.L.R.2d 542.

It is claimed by plaintiff that the verdict is the result of passion and prejudice of the jury but there is no semblance of merit to this contention. Plaintiff likewise submits assignments of error that the court refused to admit certain evidence bearing on the question of defendant's negligence; that the court did not correctly instruct on the question of attractive nuisance; that the court should have instructed the jury there was no contributory negligence; that the court refused certain requested instructions and failed to give an opportunity to object to certain instructions. A verdict in favor of plaintiff cured any possible error concerning these latter assignments.

The judgment is affirmed.

LA PRADE, C. J., and UDALL, PHELPS and STRUCKMEYER, JJ., concur.