323 P.2d 1

SOUTHERN PACIFIC COMPANY, a corporation, Tony D. Ciochetti, and Thomas E. Irwin, Appellants,

v.

E. M. CAVALLO, Appellee.

No. 6293.

Supreme Court of Arizona.

March 19, 1958.

---

Boyle, Bilby, Thompson & Schoenhair, H. C. Warnock and B. G. Thompson, Jr., Tucson, for appellants.

John P. Somers and Jack T. Arnold, Tucson, for appellee.

WINDES, Justice.

Appellee E. M. Cavallo filed suit against Southern Pacific Company, a corporation, and Tony D. Ciochetti and Thomas E. Irwin, the engineer and fireman respectively of the company's train, for personal injuries resulting from a collision between the train and plaintiff's automobile at a highway-railroad crossing. Plaintiff received verdict and judgment in the sum of $40,000 and the defendants appeal. The first assignment of error is that the court should have granted defendants' motion for judgment n.o.v. To test the correctness of the court's refusal to render judgment for the defendants it is necessary to state in some detail what facts the jury could legally find from the evidence submitted.

The crossing is located in rolling hills. The highway approaches it from the west on a long curve preceded by a cut about two miles in distance and emerges from the curve where it is possible to gain a first view of one of the crossarms indicating the existence of the crossing a distance of from 900 to 1,000 feet. Three hundred twenty feet from the crossing is a large "R. R." warning sign painted on the pavement and just past this at a distance of about 20 feet is a clearly visible highway railroad warning sign. There were two crossarm signs one on each side of the railroad which pictures in evidence show were visible from the sign on the pavement. The plaintiff testified that the first notice he had of the existence of a railroad crossing was as he drove over the sign painted on the highway traveling at approximately 40 miles per hour. He also got a glimpse of the adjoining sign. He was traveling east and the train in a northerly direction at a speed of from 10 to 12 miles per hour when the collision occurred. Plaintiff's view to his right, the direction from which the train was approaching, was obstructed by trees to such an extent that it was difficult or impossible for him to observe the approach of the train. The fireman stated it was a bad crossing.

After passing over the sign on the highway the plaintiff admits he did not slack his speed until he had traveled 170 or 175 feet when he saw the engine come from

behind the trees about 75 or 80 feet from the road. He immediately applied his brakes and heard the train whistle. As he recalled he heard the whistle immediately after the application of his brakes. From the direction in which the train was coming the railroad proceeds through a cut about 300 feet in length and approximately 25 feet in depth which ended about 600 feet from the crossing. The depositions of the fireman and the engineer were read into evidence and were substantially that the bell was put on at a whistle post approximately one-quarter mile from the crossing and remained ringing constantly, not being turned off until after the collision; that at about the same point the engineer began a series of whistles and that such whistles consisted of two long, one short and one long blast. According to the fireman the final long blast of one series was concluded as the train came out of the cut and another was commenced about 200 feet from the crossing. The engineer stated that he blew a short blast about 100 feet from the crossing and began a long blast about 50 to 75 feet from the crossing. The conductor testified that one series was completed in the cut and that another series was being blown between the cut and the crossing but that he was not certain it was completed because of the collision.

The fireman who was located on the left side of the engine stated that after the train emerged from behind the trees where he could observe the highway to his left, they were blowing the last blast of a preceding series of whistles (which consists of two longs, one short and one long) when he observed the plaintiff coming at what he estimated to be about 60 miles per hour at a distance of about 250 feet from the crossing. He said that at this time the front of the engine was substantially to the edge of the highway and he decided plaintiff was making no effort to stop and yelled to the engineer to "big-hole" the train which means emergency stop. This was done but the collision occurred. The plaintiff's truck laid down 87 feet of skid marks.

Plaintiff contends that since it was a dangerous crossing due to the terrain and the obstructions, the warning signs of the existence and location of the crossing were inadequate and the jury for this reason could determine that the company was negligent. It is unquestionably true in determining the sufficiency of such warnings all conditions and circumstances are to be considered. We have recently reiterated a test theretofore announced which measures the duty of a railroad to give such warning as will "create a condition wherein there is no reason to anticipate injury to a person using the highway with due care." Atchison, T. & S. F. Ry. Co. v. Renfroe, 77 Ariz. 28, 266 P.2d 745, 748. Applying

this test to the facts as heretofore related, our view is that there was no reason to anticipate injury to one using the highway with due care. Plaintiff was advised of the existence of the crossing by a sign which he observed from a distance in which he had 320 feet to stop or slow down to where he could stop before reaching the place of collision. The evidence was that the average stopping distance under normal conditions at 40 miles per hour allowing for reaction distance is 117 feet. Thus, absent some other act on the part of defendant which would cause him not to avail himself of precautionary measures, the plaintiff had adequate warning of the existence and location of the crossing and the company cannot be held to have been negligent for not having given adequate warning of the existence of the crossing.

■ The court submitted to the jury the question of whether the defendants were guilty of negligence under the doctrine of last clear chance. There were two openings in the trees through which the fireman could possibly observe the plaintiff coming down the highway, one close to the crossing where the plaintiff said he first saw the engine 75 or 80 feet therefrom. At this time plaintiff said he was about 130 feet from the crossing. The other opening was approximately 150 feet from the crossing. The fireman testified he first saw the plaintiff coming at a distance of about 250 feet when he emerged from the opening close to the crossing. The cab where the fireman was located was 35 feet back from the front of the engine. Consequently, when the fireman could possibly see the plaintiff from the opening next to the crossing the front of the engine, assuming plaintiff's testimony to be true, was approximately 40 feet from the crossing. There was under these conditions no possible chance for the train crew to do anything to avoid the accident. Plaintiff in his argument does not question this but argues that the jury could have determined that the fireman saw or should have seen the plaintiff through the opening 150 feet back and if he had, by the exercise of due care the accident could have been avoided. To sustain this theory plaintiff argues that from this opening 150 feet back when the fireman should have seen the plaintiff 250 feet from the crossing, the front of the engine being 35 feet ahead of the cab, the engine was then 115 feet from the crossing and making a calculation, on the basis that the train was traveling at 10 to 12 miles per hour and would travel from 15 to 18 feet per second, he says the train had 107 feet to stop before entering the highway. Assuming the calculation is correct, it would take the train from 6 to 7 seconds to reach the highway. Assuming the car was 250 feet from the crossing traveling at 40 miles per hour, during the six or seven

seconds at 58 feet per second (the average speed at 40 miles per hour) the car would travel 350 to 400 feet and would have cleared the crossing before the train arrived. Thus, assuming without deciding that the jury could have adopted plaintiff's hypothesis of the situation, the plaintiff was in no hazardous situation from which he could not extricate himself. In fact, if plaintiff's hypothesis be true, there would have been no accident. We are clearly of the view after a careful analysis of the evidence that there were no possible facts which the jury could legally find which would justify the application of the doctrine of last clear chance and defendants were not negligent under this doctrine. It was prejudicial error for the court to submit the question for consideration by the jury.

■ The only other possible debatable question concerning the negligence of defendants is the possible inadequate warning given by the train crew of the approach to the crossing. On this subject the engine crew testified concerning the sounding of the bell and the blowing of the whistle while approaching the crossing. While there is some confusion as to exactly what was done, it was testified that the bell was ringing all the time for one-quarter of a mile up to the time of the collision; that there was more than one series of whistles, each consisting of two longs, one short and one long; that the last series was commenced about 200 feet from the crossing, the short blast was about 100 feet therefrom and the last long blast immediately at the highway. The plaintiff testified that before he saw the train both of his car windows were down and that he was listening for a bell or a whistle; that he heard no bell and the only whistle he heard was when he saw the train at the crossing and put on his brakes. The question is whether the jury would be entitled to find that these signals were not so given and that there was not sufficient warning given of the approach of the train. We are well aware of the rule announced by this court that mere negative testimony that the signal was not heard carries no probative value against positive affirmative testimony to the contrary. This rule is not applicable when the witness is attentive and the location is such that the jury could say he would have heard if the signal had been given. Under such circumstances testimony to the effect that he did not hear is the equivalent of positive evidence that the signal was not given. Menard v. Boston & Maine R. Co., 150 Mass. 386, 23 N. E. 214; Annotation, 162 A.L.R. 9. This court quoted the Menard case with approval in Davis v. Boggs, 22 Ariz. 497, 199 P. 116.

■ This was in part a blind crossing and the jury could consider it as unusually dangerous. Certainly, the defendants were obliged to give such signals on the approach

as would reasonably warn highway users of the presence of the train. Our view is that the jury could determine under the evidence that had the signals been given as related by the crew, the plaintiff was in a position to and would have heard the same and not having heard, the signals were not given in the manner related by the engine crew. If the jury so found it was justified in adjudging the defendants negligent in not giving proper warning of the approach of the train. We know not upon what basis the jury found the defendants negligent. The case was submitted in such manner that it could have found inadequate warning of the existence of the crossing, failure to avail of the last clear chance, or inadequate approaching signals. Since we hold the two former bases were improperly submitted, the case must be retried.

■ The court over objection permitted the reading to the jury of the depositions of the defendants Ciochetti and Irwin who were present in court. This is claimed to be error. Rule 26(d) (2), Rules of Civil Procedure, 16 A.R.S., provides that the deposition of a party may be used by an adverse party for any purpose. As we interpret the broad language of the rule, it was not error to admit the depositions of adverse parties. 4 Moore's Federal Practice, section 26.29; Merchants Motor Freight v. Downing, 8 Cir., 227 F.2d 247;

Young v. Liddington, 50 Wash.2d 78, 309 P.2d 761.

■ Over objection the trial court admitted in evidence a document which purports to show that in the year 1953 there passed over the highway between Patagonia and Sonoita (the crossing being located between these two points) an average of 271 cars per day. The witness who testified concerning the document was traffic engineer for the state highway department. He said that counts were by some employees of the department other than himself. He did not know how many counts were made but at most it would be four times a year. The witness did not prepare the exhibit. Plaintiff seeks to justify its admission either under the provisions of Rule 44(a) or 44(q), Rules of Civil Procedure. The former refers to records required to be kept by public officers and the latter refers to records kept in the regular course of business. The exhibit is not a record of a public officer which the law requires to be kept and was not admissible upon that ground. Welch v. Medlock, 79 Ariz. 247, 286 P.2d 756. Neither do we feel there was sufficient foundation submitted to qualify the exhibit for admission under Rule 44(q). It is merely the result of some calculation made by some unknown person in the department at some time of not more than four counts made by some unknown person of the number of cars passing be-

tween Patagonia and Sonoita. The only possible materiality of the evidence would be to show the extent of traffic over the crossing during the year in which the accident occurred. The source and extent of the information and the indefinite method and time of the preparation of the exhibit are such that we do not believe it carries sufficient accuracy to justify its admission for this purpose.

Judgment reversed for new trial.

UDALL, C. J., and PHELPS, STRUCKMEYER and JOHNSON, JJ., concur.