374 P.2d 660

**BOGARD G.M.C. CO., an Arizona corporation, Appellant,**

**v.**

**Millard A. HENLEY, Appellee.**

**No. 6866.**

Supreme Court of Arizona.

In Division.

Sept. 26, 1962.

Rehearing Denied Nov. 1, 1962.

James M. Murphy, Tucson, for appellant.

Silver, Silver & Ettinger, Whitehill, Feldman & Scott, Tucson, for appellee.

W. E. PATTERSON, Superior Court. Judge (Retired).

The plaintiff Millard A. Henley obtained a judgment for $22,895 against defendant Bogard G.M.C. Company, an Arizona corporation, in the court below. Motions for a directed verdict for new trial and for judgment notwithstanding the verdict were duly made by the defendant and denied by the trial court. Defendant appealed.

Plaintiff was employed as a truck driver by the Butane Corporation of Arizona. His duties consisted of driving a truck and delivering Butane gas to various customers for his employer. On December 12, 1957 while driving a G.M.C. truck equipped with rear dual wheels on the Ajo road near Tucson, Arizona, at a speed of approximately 30–35 miles per hour, plaintiff in an endeavor to avoid hitting a dog that came suddenly onto the road claims he applied his brakes and that one of the left wheels of the truck locked, thus throwing him across the truck in such a manner that he was rendered unconscious. The truck was carrying approximately 1100 gallons of Butane gas at the time of the alleged accident.

Plaintiff testified that on two or three occasions prior to the accident he had taken the truck to defendant's garage for brake repair; that he advised defendant's fore-

man that the brakes were grabbing on the left wheels and were in need of adjustment and repair. The defendant claims the brakes were checked by the mechanic and were found to be in good working condition and repair.

The highway patrolman who investigated the accident testified there were skid marks on the highway at the place of the accident approximately 34 feet in length; that when he tested the brakes while the truck was not in motion they appeared to be in proper condition. The patrolman also stated that the skid marks on the pavement were single marks on each side of the truck and that the accident occurred on a straight section of the road; that the skid marks were slightly darker on the left side of the truck than on the right. There was no damage done to the truck as a result of the accident.

When the truck was brought to the garage after the accident Mr. W. B. Pruitt, the night foreman, checked the brakes and found them working properly. However, he disassembled the left rear wheel and found a small Woodruff key on top of the bottom brake shoe and a broken spring that is attached to the brake shoe. This witness testified that the key lying on top of the brake shoe did not cause a malfunction of the brake; that to have a malfunction would require that the key be lodged between the brake shoe and the brake drum, which didn't happen in this case. In bringing the truck to the garage after the accident a tow car was used; the front wheels were lifted up and the truck was trailed behind. When the truck was brought into the garage there was no evidence of the rear wheels not operating freely.

The evidence shows that the operation of the brakes on the truck were both hydraulic and mechanical. The hydraulic system is a complete system within itself which works from the time the brake pedal is pushed down until the individual brakes are reached. Once the individual brakes are reached the operation becomes a mechanical process. The mechanical operation of the brakes on each of the four wheels is separate and distinct, each wheel being independent of the other. However the operation of the hydraulic system itself is one which operates as a unit, all inclusive. The hydraulic system shows faultiness when the brake pedal is soft and will go down to the floor without pressure resistance. There can be a mechanical fault without existence of a hydraulic fault. Sixty percent of the braking is on the front wheels and forty percent on the rear wheels. On the ratio of 60–40, on the hydraulic brakes, a sudden application of brakes in good condition would cause the front wheels to slide in advance of the rear wheels with the shifting of the load to the front.

The defendant makes seven assignments of error. However, we believe that a care-

ful consideration of the second and third assignments will be dispositive of the appeal.

In the second assignment the defendant alleges that the court erred in denying defendant's motion for a directed verdict at the close of plaintiff's case, and in denying defendant's motion for judgment notwithstanding the verdict at the close of the case, for the reason that the highway patrolman was allowed to testify as an expert that merely by looking at certain skid marks on the pavement he could determine what brake was defective and which side of the truck had the defective brake.

It is the contention of the defendant that the patrolman based his conclusions solely upon the skid marks and that no other facts were presented to him in the form of hypothetical questions, or otherwise, upon which he could predicate his answers. His conclusions, which he was allowed to state to the jury over the objections of the defendant, are as follows:

"Q   Applying the knowledge gained by you in school and that gained by you from practical experience in investigation of accidents, are you able to reach a conclusion as to the reason that one skid mark, the left skid mark in this accident, was heavier than the right?

"A   My opinion is that it was due to defective brakes in that the *left* wheel locked, the brake locked on it, *causing the rear wheel to lock*, therefore, leaving the heavy solid and dark skid marks, whereas, the right side, having just enough pressure to just barely leave a mark, or that with the left wheel locking, it would slow the right side down enough to leave a light black skid.

"Q   In other words, the reason for the difference in the heaviness is that the left wheel, the brake locked on the left wheel, and they did not on the right?

"A   That is right.   The left wheel would be either almost completely stopped, I say 'almost', I don't know whether it was completely, or barely turning, but stopped substantially enough to where it left a heavy black skid."   (Emphasis added.)

On cross-examination the following questions and answers were made:

"Q   Mr. Meehan, were these skid marks dual skid marks or singular, single, do you remember?

"A   No, I remember it was one. The one on the right side appeared to be just one skid.   I mean on the left side appeared to be just one and also on the right side it appeared to be just one; one wheel.

"Q   Just a single mark on each side?

"A Yes.

"Q Of the truck?

"A Yes.

"Q How long were those skid marks?

"A Approximately 34 feet.

"Q Both of them?

"A The right one was slightly shorter than the left one."

Since the dual rear wheels on either side of the truck were bolted together, if one dual wheel skidded it would naturally follow that both tires on one dual wheel would skid, especially in view of the load the truck was carrying. The patrolman testified there were but single skid marks on each side of the truck, that extended approximately 34 feet, therefore it appears the conclusions reached by the patrolman were based on an unrealistic premise. This conclusion is further confused by the testimony of the patrolman that the left rear wheel locked, whereas in plaintiff's deposition taken before trial he testified that the "cause of the accident was the locking of the left front wheel." It would seem most improbable that this heavily loaded truck could skid its left rear dual wheels for a distance of 34 feet and still leave no evidence of dual skid marks.

When the foundation for admission of the patrolman's testimony was made the plaintiff failed to establish that he had any knowledge of the workings of hydraulic brakes. His testimony "that the left wheel locked, the brake locked on it, causing the rear wheel to lock" calls for his conclusion as to the mechanical operation of the brakes. This testimony was offered as opinion evidence based upon his experience gained at school and by practical experience in investigating accidents but did not show he had any knowledge or experience with hydraulic brakes of the nature and kind on the truck involved in this accident.

It is the law that opinion evidence is entitled to weight only consistent with probability and reason, and a conclusion contrary to reason or to common knowledge and experience has no probative force and is insufficient to support a verdict. In Atchison, Topeka & Santa Fe Ry. Co. v. France, 54 Ariz. 140, at page 143, 94 P.2d 434, at page 436, we said:

"* * * We have held practically ever since the establishment of this court in the early seventies that we will not disturb a verdict and judgment because we believe it contrary to the weight of the evidence, but will only set it aside when there is no evidence to sustain it, or when the evidence is either physically impossible or so incredible that we are compelled to hold that the verdict was the result of prejudice and passion on the part of the

jury. Inter-state Fidelity B. & L. Ass'n v. Hollis, 41 Ariz. 295, 17 P.2d 1101; Wright v. Young, 20 Ariz. 46, 176 P. 583; Otero v. Wheeler, 21 Ariz. 50, 185 P. 359; Butler v. Shumaker, 4 Ariz. 16, 32 P. 265."

■ The bare possibility that an accident happened in the manner claimed by plaintiff is insufficient cause to submit the case for decision of the jury. Watson v. Southern Pacific, 62 Ariz. 29, 152 P.2d 665.

■ It is probable that the statements of the highway patrolman, by virtue of his position, were given great weight and credence by lay jurors and without question were a prominent factor in the jury's determining the verdict. In the case of Lee Moor Contracting Co. v. Blanton, 49 Ariz. 130 at page 145, 65 P.2d 35 at page 41, we stated:

"If we could convince ourselves that this error was without prejudice to the rights of the defendant, we would notwithstanding refuse to reverse the case. No doubt Canfield occupied a rather prominent place in the minds of the jurors, he being the representative of the state to see that the work of construction was carried on properly. We cannot say just how much or how little credence was given to his judgment or conclusion, and for that reason we feel that the case should be retried."

Without determining the question of whether the patrolman was qualified by training and experience to give his conclusions as to the cause of the accident, we are of the opinion that there was not sufficient foundation laid upon which to predicate the testimony he gave, based solely on two single skid marks. The court erred in permitting these conclusions to be presented to the jury.

The defendant next contends that the court erred in refusing to allow him to introduce in evidence certain portions of plaintiff's deposition, and in refusing to allow certain answers to written interrogatories to be introduced where plaintiff's answers were contradictory to his testimony given at the trial. The record discloses that the defendant offered to read into evidence certain portions of the deposition of the plaintiff which were offered for all purposes, including impeachment. In response to plaintiff's objection to portions of the deposition the court stated:

"Well, the plaintiff being present, any portion that has already been used for impeachment purposes or attempted impeachment purposes will not be admissible for that purpose or any other purpose, and a deposition is not admissible in evidence when the party who was deposed in the deposition is present and available."

The defense likewise endeavored to introduce certain interrogatories, together with

the answers made by the plaintiff, into the record. Again, in response to the objection of the plaintiff, the court said:

"The interrogatories are in the same classification as the deposition or admissions under our discovery procedure and may be used for any proper purpose. There again they are usable for impeachment purposes and so forth but not necessarily to just read to the Jury except in the absence of the person who answered the interrogatories."

The defendant contends that the ruling of the court was contrary to the Rules of Civil Procedure and as such constituted error. Rule 26(d) of the Rules of Civil Procedure reads in pertinent part:

"(d) Use of Depositions. At the trial * * * any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any one of the following provisions:

* * * * * *

"2. The deposition of a party * * may be used by an adverse party for any purpose."

Rule 33 of the Rules of Civil Procedure, pertaining to interrogatories, in pertinent part reads:

"Interrogatories may relate to any matters which can be inquired into under Rule 26(b), and the answers may be used to the same extent as provided in Rule 26(d) for the use of the deposition of a party. * * *"

The court by its rulings precluded defendant from offering any portion of the deposition and interrogatories, since the plaintiff was present in court. This was a blanket ruling which prevented the defendant from introducing evidence from the deposition and interrogatories which he claimed were pertinent and material to the issues in the case. In the interrogatories the plaintiff directly states the cause of the accident as follows: "The left front brake locked." Furthermore the deposition shows that the following questions were propounded and answers made:

"Q On these occasions, were the brakes not working at all or they wouldn't work as well as they should work, which was it?

"A There was one wheel locking on it.

"Q You say one wheel was locking?

"A The left front and the brakes would go completely out before I could get back in."

■ In the deposition the plaintiff stated in answer to Interrogatory No. 7 given on

July 17, 1958, "that the left front wheel locked and caused the accident." In his deposition taken on August 13, 1958, he made a like statement. On November 29, 1958 the plaintiff testified that the brakes were grabbing on the left wheels and he could not be sure which one it was because it would pull on the steering wheel as it had been doing for some time. Clearly the defendant had the right to present these inconsistent statements from the deposition and interrogatories to the jury.

We have held that any competent evidence in a deposition of an adverse party may be used in the trial of the case for any purpose. So. Pac. Co. v. Cavallo, 84 Ariz. 24, 323 P.2d 1. Blashfield on Automobile Law, section 6163.

■ The court committed reversible error in its rulings that the testimony of the plaintiff given in his deposition and in the interrogatories could not be presented to the jury under the circumstances in this case.

The court does not find it necessary in the disposition of this case to rule on the other assignments of error.

The judgment is reversed and the cause remanded for a new trial.

UDALL, V. C. J., and LOCKWOOD, J., concur.