Dorris *v.* Bridgman & Co., Appellant.

Argued December 5, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Francis Chapman,* for appellant.—There was no sufficient evidence of negligence on the part of defendant to justify the submission of the case to a jury.

Plaintiff, on her own testimony, was guilty of such contributory negligence as to defeat a recovery: Harris v. Ice Co., 153 Pa. 278; Dennison v. Iron Co., 22 Pa. Superior Ct. 219; Osterheldt v. Peoples, 208 Pa. 310; Barton v. Craighill, 268 Pa. 464; Lessig v. Transit & Light Co., 270 Pa. 299.

*M. A. Foley,* of *Graham, Garaguso & Foley,* for appellee.—Defendant was negligent: Bucklin v. Davidson, 155 Pa. 362; Lewis v. Wood, 247 Pa. 545; Mackin v. Patterson, 270 Pa. 107; Kelly v. Werner Co., 69 Pa. Superior Ct. 342; Virgilio v. Walker, 254 Pa. 241; Anderson v. Wood, 264 Pa. 98; Silberstein v. Showell,

Fryer & Co., 267 Pa. 298; Mooney v. Kinder, 271 Pa. 485; Rosenthal v. Phonograph Co.,.274 Pa. 236; Gilles v. Leas, 282 Pa. 318; Robb v. Cab Co., 283 Pa. 454.

Plaintiff was not guilty of contributory negligence: Lewis v. Wood, 247 Pa. 545; P. & R. R. R. v. Hummell, 44 Pa. 375; Kelly v. Werner Co., 69 Pa. Superior Ct. 342; Deary v. Harris, 282 Pa. 171; Lane v. Mullen, 285 Pa. 161; Eckert v. Shipbuilding Corp., 280 Pa. 340.

OPINION BY MR. JUSTICE KEPHART, January 7, 1929:

Plaintiff was injured at a street crossing in the following manner: She was on her way to work, walking on the western side of Tenth Street going north to Spruce Street. Before attempting to cross Spruce Street she looked west and saw defendant's truck and trailer approaching east, the wheels in the car tracks. Plaintiff started to cross, but, fearing there was not sufficient time to pass ahead of the approaching truck and trailer, she stopped in the cartway about three feet from the south rail, or perhaps midway between it and the curb. The truck passed her, and, as the rear of the trailer went by, she was struck on the head by a piece of pipe and very seriously injured. Appellant claims there was no negligence shown, and that plaintiff was guilty of contributory negligence.

Defendant's negligence is claimed, first, because of its use of an improperly and dangerously loaded motor vehicle on the highway; second, because of negligent operation of the truck and trailer.

The truck and trailer, connected, were twenty-six feet in length and six feet in width. The trailer was loaded with five-inch twenty-two-foot iron pipe, which projected from the rear five feet. One of the pipes, weighing one hundred and fifty pounds, thus extended, diagonally, overhung the side of the truck, beyond the body line, from twelve inches to two feet. Whenever the truck ran out of a straight line there was a swaying or circling motion of the pipe. The space in the cartway so occupied

by the truck and trailer would include its normal width plus the distance the pipe in question projected beyond the body line, in all approximately from eight to ten feet.

The owner's employees testified the truck was loaded with great care; that four tons of iron were placed on it when it left the factory; and all the pipes were in a straight, well placed position. There was no ordinance in Philadelphia regulating the manner of loading trucks.

The facts give rise to a consideration of the enlarged use of highways by business or manufacturing concerns, and the duty or obligation owed to the traveling public. This increased traffic,—the hauling of heavy freight or large bundles,—comes from the improved facility of motor transportation; much of this new traffic has been diverted from the railroads, and it is seemingly the demand of industry and business not only that the highways must freely receive and bear this additional burden, but that the rights of the public, as pedestrians, to safe travel should be correspondingly lessened to insure expeditious movement. It is undoubtedly true it was not originally intended, when our streets were laid out, that they should be subjected to this enormous increase in business traffic. Upon the advent of the motor vehicle, highways became immediately available, and, without cost to these owners, a suitable roadbed was laid for them. Such use cannot be denied; but it may be regulated by the legislature. There is no question but that stricter rules to insure the safety of pedestrians should be adopted and enforced, because of this new and dangerous traffic. The question is important both to the public and to business.

The truck and trailer in question, 32 feet long, loaded, resembled a train running on the street, without being confined to tracks or any fixed line of movement; under such conditions a trailer may slip on the cartway, as the ground is often wet or icy. It also follows each giration of the truck. If the driver attempts to escape a hole by a lateral deviation, and then straightens out, the

trailer follows the lead, and the load protruding from the rear swings in fan-like motion. This train came down the street at a speed of forty miles an hour, as testified by one witness, and one pipe of its four-ton load of heavy iron projected beyond the body line a foot or two. The driver says he did not know this; nor did he take any means to ascertain it. If he did not know, he should have known. It was his duty to know. Plaintiff, standing in an apparently safe place, saw the truck approach; it passed her with the trailer; and then this pipe, sticking out from the rear, struck her a blow in passing that crushed her skull and as a result has left her at times an imbecile. Another view of the negligence comes from the testimony of one of plaintiff's witnesses. As plaintiff came to the curb she stepped down two feet, and waited for the truck to pass. The truck pulled out of the car tracks to get around a street car, and then swung back toward the tracks. This caused a fan-like motion of the pipes in the rear of the trailer, with the projection out two feet as a hook; its movement was like the swinging of a scythe, mowing down objects in the way. In this zigzag motion of the car, it caught the plaintiff.

It is not necessary, to secure safety to pedestrians, to make business an insurer against all accidents; but in the transportation over highways of heavy commodities, business and industry in this respect should adopt safe vehicles and appliances, and operate them with reasonable precaution for the safety of those lawfully on the highways.

These great trucks and motor busses, domestic and interstate, occupy at times much of the street. In fact in large centers they seem to make public garages of the highways. In traveling they bear down on pedestrians or approaching automobiles, assuming a proportion of great size. They strike fear into individuals who try to pass them, and many machines are forced from the road when they meet. It is common knowledge that

such engines are manned by persons utterly oblivious of the rights of others, of whom the greatest offenders are the operators of interstate machines, with their federal protection. These drivers act as though the rights of the public on the highways had ceased to exist, and, because of federal decisions, state officers are denied the exercise of that regulation which alone gives the public protection.

In determining the sufficiency of the evidence of negligence, the sweep or path of the car, its speed and movement, and any projection beyond the body are to be considered. It is elementary law that where one uses on the highway a vehicle not properly loaded, he will be liable for any accident that may come from such improper loading. Nor is the duty of the person using the machine to see that it is in proper condition lessened by the fact that the vehicle for any reason becomes improperly loaded while actually on the highway. Where one uses a motor vehicle on the highway, improperly loaded, or with any projection extending beyond the lines of the car, he will be presumed to apprehend any danger that may come from the ordinary movement of the vehicle, the trailer and any projections, and will be responsible for any injury occasioned thereby. The fact that the user does not know persons or objects are within the path of such movement, or within the zone of apprehensible danger, is immaterial; care under the circumstances includes a presumptive knowledge of that fact; the car should be operated so as to avoid injury to such persons or objects, unless they dart suddenly into the path of danger. Where a truck and trailer travel on a highway, the zone of apprehensible danger includes not only objects immediately in front, but such objects as may come within the swinging, swaying or swerving radius of the trailer. Where the truck, or the trailer of a truck or other motor vehicle, is loaded with objects which stick out beyond the body of the truck or car, and in driving on the highway an injury results to persons lawfully

on the highway, by contact with such projection, or the side movement of the trailer, the presumption of negligence may arise from two circumstances: improper loading of the vehicle, or its improper operation. The legal principles involved in the foregoing may be found in the following cases: Lewis v. Wood, 247 Pa. 545; Virgilio v. Walker & Brehm, 254 Pa. 241; Robinson v. American Ice Co., 292 Pa. 366; Hull v. Bowers, 273 Pa. 429; Lane v. Mullen, 285 Pa. 161; Eckert v. Merchants Shipbuilding Corp., 280 Pa. 340; Kelly v. Werner Co., 69 Pa. Superior Ct. 342.

On the proposition that the car was negligently operated, the jury could have found from plaintiff's testimony that defendant's driver could have seen her in the path of the car long before he reached a point opposite to where she was standing. According to defendant, she left the sidewalk after the driver had passed. In either, view, it is immaterial whether he saw her or not. The space occupied by the truck and its projection, as it came down the street, was from eight to ten feet. She stood in what an ordinarily prudent person would consider a place of safety. In this position the projection from the rear would hit her; the driver knew how much space in the road his car occupied, and that, unless he exercised due care, he would strike any person in front of or within range of the projection's movement. We regard the movement and space in front of the projection in the same light as the space in front of the truck itself. As described by some of plaintiff's testimony, the case has all of the aspects of a frontal collision, where a man is standing in the highway and a driver runs him down.

Defendant claims plaintiff was guilty of contributory negligence. Was she bound to know the truck was loaded improperly as it approached? Was she bound to see the projection, and was she bound to judge with accuracy whether she would be caught within its movement,—either in a straight line or sidewise? Plaintiff was required to use ordinary care to observe what was

about her, and to use that same care as the truck approached and passed. If by the use of such care, having due regard for her safety as to other vehicles, she could have seen the projection on the rear of the trailer, and if at the same time she as a reasonable person must have known it would strike her, then the jury might find she neglected an act for her safety. Knowing this as an ordinarily prudent person, she should not have remained in her position. It is a question of care combined with judgment, and ordinarily is for the jury to decide. We held a short time ago, that the driver of a car was not guilty of negligence in not seeing a rope lying in the street, as it was a small object. While the pipe was somewhat larger, certainly we would not conclude as a matter of law that plaintiff was guilty in not seeing it, or, if seeing it, she could judge the distance it extended.

It is urged, if we invoke these rules as to trucks and busses, we create the obligation of an insurer. We do not agree. First, the user must know the space his truck, trailer or projections occupy; second, the pedestrian must be observant. Whether he saw a projection and knew the extent of its sweep is for the jury. The duty as to seeing a projection is not, however, as rigid as that of seeing the truck approach. The pedestrian of course cannot hold the user liable, if, without observation, he suddenly darts in front of the truck or projection. Drivers of these motor vehicles on their part may protect themselves, as other transportation companies do, by reducing the speed of the truck, and by placing a man in the rear to warn pedestrians of danger.

Appellants' cases deal with situations entirely different from the case at bar. Moreover, this case concerns fast moving vehicles or those moving faster than horses and wagons. Barton v. Craighill, 268 Pa. 464, may be explained by the fact that plaintiff was moving away from the truck when the driver noticed her.

Judgment affirmed.