Seader, Administrator, et al., Appellants, *v.*
Philadelphia.

. Argued December 2, 1946. Before MAXEY, C. J.,
DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused September 29, 1947.

*Thomas Z. Minehart,* with him *Maurice A. Bank,* for
appellants.

*Aaron W. White,* with him *John J. K. Caskie,* Assistant City Solicitors and *Frank F. Truscott,* City
Solicitor, for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, June 30, 1947:

The appeals are from a judgment for defendant *non obstante veredicto.*

Conrad F. Seader, twelve years of age, was killed by a large truck and trailer owned and operated by the City of Philadelphia. Suit was instituted by the administrator of the decedent and by his father and mother against the City charging the negligent operation of the vehicle. The jury rendered a verdict for plaintiffs, which the court set aside by its judgment for defendant n. o. v.

Viewing the testimony in the light most favorable to plaintiffs, the salient facts may be stated as follows: On March 6, 1945, at about 4 p. m. employes of the defendant were engaged in collecting ashes and trash on Locust Street between 43rd and 44th Streets, in the City of Philadelphia. Locust Street was a west-bound one-way street. It is 34 feet wide from curb to curb and there is a 3 per cent upgrade westward between 43rd and 44th Streets. On that afternoon the street was wet, but not frozen. The vehicle involved was a combination tractor and trailer with automotive power. When coupled together it was 44 feet 6 inches long. The tractor was 7 feet 8 inches wide and the trailer 7 feet 10 inches in width. There is no allegation or evidence of mechanical defects in the vehicle or that it was driven at an excessive speed or in violation of traffic regulations. No objects were projecting from its side or rear.

Decedent, accompanied by a boy companion, both on roller skates and each with a bundle of newspapers in a cloth container slung over a shoulder, came out of a newspaper distributing center at 4303 Locust Street (i. e. north side). The boys skated from the building to the curb. Because the sidewalk was littered and the middle of the street was clear, the boys decided to skate in the middle of the street. They stepped down from the curb and started to "trudge" westward on Locust Street about one foot south and parallel with the curb. At this

time the vehicle was proceeding northward on 43rd Street and turned westward into Locust Street on the north side of the street. The boys observed the vehicle as it came north on 43rd Street and made the turn into Locust Street and while it was proceeding west on Locust Street. In the street, as above indicated, decedent was about 8 feet in front of his companion de Haas. The boys stood still in front of 4305 Locust Street to permit the vehicle to pass them. The vehicle was passing the boys about one foot south of them. While the vehicle was passing both boys started to walk or "trudge" westward. The entire vehicle passed the companion de Haas. The tractor and most of the trailer passed decedent, when the vehicle turned "slightly" toward the southwest, i. e. to the left and away from decedent. The movement was made to pass a horse and wagon standing on the north side of Locust Street along the curb. At or about that time the trailer, about 8 feet from the rear, came in contact with decedent who fell under the wheels and was run over. It was testified by de Haas that the slight turn by the tractor caused the rear of the trailer to "sway", which occasioned the accident.

The witness described what he meant by "swaying." On cross examination he was asked: "Q. It did not skid or slide over to strike (decedent) did it? A. I didn't watch it that closely, but I know it swayed. Q. The vehicle just sort of rocked a little from side to side? You have used the word "swayed"—is that it? A. I guess that is what swayed means. As it came over, as it struck (decedent), it moved quite a distance, I know, and maybe you would call that skidded. *By the Court:* Q. Well, you might call it swinging? A. Yes, it swung."

We are in accord with the following extract from the opinion of Judge Carroll, who in speaking for the court said: "The mere happening of an accident, such as this, does not establish negligence. There is no evidence of any improper driving; the driver had cleared both boys and the evidence does not disclose any carelessness on

his part or any defective condition of the vehicle. The vehicle was moving at a very slow rate of speed and the driver had no reason to anticipate that while moving slowly up-grade, a slight deflection of the vehicle in a direction away from the skaters could cause the rear side of the truck to sway over and strike one of them."

In *Osterheldt v. Peoples,* 208 Pa. 310, 57 A. 703, plaintiff stepped on a street crossing when the body of a passing wagon was directly in front of her. The driver was sitting in front of the wagon, which had then passed the crossing. In turning a corner projecting lumber struck and injured plaintiff. This Court affirmed judgment for defendant on binding instructions.

In *Barton v. Craighill,* 268 Pa. 464, 112 A. 96, the driver of a truck saw a pedestrian stop and move backward as if to get out of the way, and afterwards the driver turned from the straight course and the pedestrian was struck and injured by an iron beam projecting 5 feet from the back of the truck. It was decided that the driver was not obliged to look back after he had seen the pedestrian's movements.

In the instant case the driver passed the decedent and his companion while they were standing waiting for him to pass them, a foot away from the truck. The driver had the right to travel on the street and was not obliged to stop or keep on in a straight course because he saw the boys beside his vehicle, but in a place of safety.

The case of *Dorris v. Bridgman & Co.,* 296 Pa. 198, 145 A. 827, relied upon by appellants, presented a different factual situation. There a pedestrian was struck by iron pipes projecting from a speeding truck. The accident is described by Justice KEPHART (later Chief Justice), at page 202: "As plaintiff came to the curb she stepped down two feet, and waited for the truck to pass. The truck pulled out of the car tracks to get around a street car, and then swung back toward the tracks. This caused a fan-like motion of the pipes in the rear of the trailer, with the projection out two feet as a hook;

its movement was like the swinging of a scythe, mowing down objects in the way. In this zigzag motion of the car, it caught the plaintiff." In *Bryson v. Raum's Admr.*, 243 Kentucky Reports 121, also relied upon by appellants, recovery was allowed where an automobile came up behind a boy on roller skates and passed so near the boy that he put his hands against the vehicle to keep him from being pressed against the curb. The car then turned away from the boy causing him to fall upon or against it to his injury. Such a situation is wholly different from the facts here presented.

Plaintiff's evidence having failed to establish any negligence on the part of defendant's driver the appeals must be dismissed.

The judgment is affirmed.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

It is important to bear in mind that the *sole* basic question on this appeal is whether the evidence in the case justified the jury's finding that negligence on the part of the defendant was the proximate cause of the fatal injuries to Conrad Seader for whose death the instant suit was brought by his parents and his administrator for the recovery of damages. Admittedly, no question of contributory negligence, as a matter of law, is here involved.

The action of the court below in entering judgment n. o. v. for the defendant rests solely upon the court's assumption that the plaintiffs failed to prove the defendant negligent. The fact is that the defendant's causative fault in the premises appears with a greater certainty than is ordinarily to be found in accident cases. That certainty logically results from applying to the facts, to which the plaintiffs are now entitled, the rule of law which prescribes that it is the duty of an operator of a modern *tractor-trailer* on a public highway to be mindful

of the safety not only of those in front of him (in the direction of his travel) but also of those who may come within "the zone of apprehensible danger" along the sides of the trailer, i.e., "within the swinging, swaying or swerving radius of the trailer",—a condition which is especially pronounced on wet or icy roads and streets: *Dorris v. Bridgman & Co.*, 296 Pa. 198, 203, 145 A. 827.

The court below, whose judgment the majority of this court now sustains, exculpated the defendant of the charge of negligence on the ground that "The duty of the driver [of the tractor-trailer] required his attention to the road in front rather than anticipating anything which might happen in the rear of the truck". The opinion for this court advances no other reason for denying plaintiffs their right to recover. I am wholly at a loss to understand how the duty of an operator of a present day tractor-trailer can possibly be so narrowly restricted. In our own pertinent decision in *Dorris v. Bridgman & Co.*, supra, Mr. Justice KEPHART laid down what seems to me to be the reasonable and obviously necessary rule that "Where a truck *and trailer* travel on a highway, *the zone of apprehensible danger* includes not only objects immediately in front, but such objects as may come within *the swinging, swaying or swerving radius of the trailer*". (Emphasis supplied).

True enough, in the *Dorris* case there was the additional negligent circumstance in the loading of the trailer with heavy iron pipes which overhung the rear of the vehicle by five feet, one pipe lying in a diagonal position causing it to extend beyond a side of the area traversed by the body of the trailer. Actually, the length of the radius afforded by the pivoted trailer in the instant case was seven feet longer than the radius of the trailer *and* the extended pipe in the *Dorris* case. Even so, improper loading was only one of two independent elements making for the defendant's negligence in the *Dorris* case. The other element, viz., the defendant's negligent operation of the tractor-trailer furnishes the rule pertinent to the facts of this case. The principle

here applicable is implicit in the *Dorris* decision which plainly recognizes the possibility of negligence in "the operation of [a] truck and trailer" to be derived from the side movement of the trailer when sufficient to cause injury to a pedestrian standing nearby but out of the vehicle's normal line of travel.

This development in the law of negligence, as thus recognized by Mr. Justice KEPHART in the *Dorris* case, is but an illustration of the natural growth of tort law which of necessity resides in court decisions. Because of the relative standard for determining the existence of negligence, the decisional rules for testing whether the care required in a given instance has been exercised must necessarily be altered at least to the extent of adapting them to the changing circumstances of modern transportation and communication. That the advent of the tractor-trailer, originating from the development and expansion of business, has resulted in the greater use of public highways and that the hazards to which the ordinary person must expose himself daily in his use of the highways have been thus greatly increased are facts self-evident and were understandingly so recognized in the *Dorris* case. A tractor-trailer in combination is not rigid, as an operating unit, like a truck which, on a single chassis, with front and rear wheel contacts with the highway, constitutes the entire automotive vehicle. The nature of the fastening device of a tractor-trailer enhances its very danger by increasing the potential swing or sway and therefore necessitates utilization of a greater highway space. The immensity of these vehicles (likened to a train running down the street by Mr. Justice KEPHART) adds further to the incident dangers. Indeed, it has been recognized by this court that the bulky dimensions of these cumbersome vehicles is a pertinent factor to be considered in the determination of care in their operation, because their length and width may be among the conditions and circumstances attending the alleged negligent act charged. In this connection Mr. Justice (now Chief Justice) MAXEY pertinently ob-

served in *Nevin Bus Line, Inc. v. Hostetter Co., Inc.,* 305 Pa. 72, 78, 155 A. 872, "The jury had a right to consider this excessive width, [viz., eight feet] not for the purpose of convicting the defendant of violating the provisions of the Vehicle Code relating to the width of trailers, but for the purpose of considering that fact with the other evidence in the case as one of the circumstances by which the care exercised by the defendant was to be measured". The trailer in the instant case was seven feet ten inches wide and, together with the tractor, was forty-four feet six inches long. On the not uncommon sixteen foot roads of this Commonwealth such a vehicle would occupy completely one-half of the highway exclusive of incidental swing or sway emanating from its radial movement or thrust upon being deviated from a straight line of direction, e.g., in doing no more than turning a curve or even a slight bend in the road. But, the majority opinion holds that the operator of the tractor is under no duty to consider a possible lateral movement of an attached trailer.

It seems not unreasonable to suggest, as the *Dorris* case envisioned, that the operator of a tractor-trailer owes a duty to persons coming within the zone of apprehensible danger along the side of the trailer due to the operator's sudden deviation from the line of travel. Here, for the asserted purpose of avoiding a vehicle parked on the north side of Locust Street, the driver suddenly veered the tractor diagonally in its course,— a movement which the jury was justified in finding was the cause of the trailer's wide swing. There is certainly no arbitrary legal standard on the basis whereof the trial court could say, as a matter of law, that the evidence did not justify a finding of negligence merely because a witness had not gone on and given his opinion that the wide swing of the trailer was due to the diagonal veering of the tractor. That matter was peculiarly for the jury.

The cases of *Barton v. Craighill,* 268 Pa. 464, 112 A. 96, and *Osterheldt v. Peoples,* 208 Pa. 310, 57 A. 703,

cited in the majority opinion, are not presently in point. *Barton v. Craighill,* at most a per curiam affirmance of a judgment n. o. v. for the defendant, is readily distinguishable on its facts,—the distinguishing feature being that the injured pedestrian in that case, when last observable by the driver of the truck, was in a place of safety and moving away from the truck. The judgment n. o. v. for the defendant, there entered, is logically explainable on the basis of the pedestrian's contributory negligence which is not involved here. In passing, it may also be noted that the *Dorris.* decision likewise distinguished and thereupon disregarded the *Craighill* case. The advent of a new era of tremendously increased vehicular traffic with its large trucks and buses and huge tractor-trailers and the consequent complexity of modern driving renders *Osterheldt v. Peoples,* involving a horse and wagon accident of 1902, practically useless as a guiding principle to the situation presented by the facts of the instant case. More in line with the facts and circumstances here present is the case of *Clark v. Philadelphia Transportation Company,* 156 Pa. Superior Ct. 623, 41 A. 2d 282. In that case it was recognized that the swerve and sidewise sagging of a bus, as well as the play in the springs under the force of a sudden turn, may be so great as to cause the body of the bus to extend over the curb line and thus become the proximate cause of injury to a person standing on the sidewalk. No further showing of negligence in the operation of the bus was required to support a verdict for the injured person in the *Clark* case. The fact that Conrad Seader and his companion were standing in the cartway did not serve to render the defendant immune from liability for the negligence of the tractor's operator who was aware of their presence at the side of the trailer. The evidence shows that, when on the street, they were standing in a place of safety which would have continued so to be had not the rear of the trailer been made to swing sidewise as the result of the driver's sudden lateral deflection of the tractor.

As I think the plaintiffs made out a case of liability on the part of the defendant, I necessarily dissent from the judgment which denies them a right of recovery.

Mr. Chief Justice MAXEY and Mr. Justice DREW join in this dissent .