# Phoenix Insurance Company *v.* McDermott Brothers Company, Appellant.

Argued January 12, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Bernard Meyerson,* of the New York Bar, with him *Irvin Stander,* for appellant.

*Robert H. Jordan,* for appellee.

Opinion by Mr. Justice Musmanno, March 16, 1965:

The Carney Machinery Company, in Allentown, owner of a heavy piece of machinery called a gear hobber, then in Brooklyn, desired to have it transported from that place to Allentown. It contracted with the McDermott Brothers Company to effect the transfer, agreeing to pay $50 a day, plus costs, for the haulage. One of Carney's men recommended to Henry Bachman, driver of the McDermott truck, on which the gear hobber was to be transported, that he should not follow the customary Holland Tunnel route because the gear hobber was too high to enter into the tunnel. Bachman accordingly crossed from New York into New Jersey via the George Washington Bridge but, when he reached a point west of the Newark Airport on Route 22, he attempted to drive under a bridge which did not have enough clearance for the perpendicularly projecting gear hobber, and in consequence, the upper part of the gear hobber struck the underside of the bridge with such force as to do considerable damage to the gear hobber.

The Carney Company carried insurance with the Phoenix Insurance Company on the machinery and thus received $28,101 from the insurance company for the damage done to the gear hobber. The insurance company then, under its rights of subrogation, entered an action of trespass against McDermott Brothers to recover what it had paid to Carney, averring that the gear hobber suffered wreckage because of the negligence of McDermott, particularly through its servant and employee Bachman. The jury returned a verdict for $26,500 in favor of Phoenix and McDermott appealed, seeking judgment n.o.v. or a new trial.

The appellant maintains that the plaintiff did not prove a case of negligence against McDermott, arguing that there was no sign on the damaging bridge to warn

Bachman of the low overhead. This lowness, however, must have been apparent to him. "Where one uses a motor vehicle on the highway, improperly loaded, or *with any projection extending beyond the lines of the car*, he will be presumed to apprehend any danger that may come from the ordinary movement of the vehicle, the trailer and any projections, and will be responsible for any injury occasioned thereby." *Dorris v. Bridgman & Co.*, 296 Pa. 198. (Emphasis supplied)

Bachman knew he was carrying a tall cargo and had, in fact, been warned by Carney's man not to attempt, for that reason, to enter the Holland underwater tube. He needed no sign on the bridge, where he came to grief, to tell him of what he already knew. The driver of an open truck carrying a giraffe does not need to be warned at every bridge under which he must pass, to measure the length of the giraffe's neck before attempting the passage.

Nor may a driver of a motor vehicle plead forgetfulness or absent-mindedness as to the nature of his cargo. No motorist may gather wool at the wheel of his vehicle without being responsible for the damage which results from his daydreaming. The jury was wholly justified in finding that Bachman was negligent in the manner in which he drove the truck carrying the gear hobber.

The defendant McDermott urges also that Bachman was Carney's servant and agent at the time of the accident or, at least, he was a joint employee of both McDermott and Carney. If, in fact, Bachman was in the employ of Carney, Carney would, of course, have no right of action again McDermott and it would naturally follow that Phoenix, as subrogee, would have no more rights than those appertaining to Carney. Whether Carney had any control over Bachman was a question of fact for the jury to decide. McDermott is of the belief that since a Carney employee cautioned

Bachman not to take the underwater route because of the tightness of the tunnel, this made Bachman a Carney servant and agent. McDermott argues a non sequitur. Carney's agent merely cautioned Bachman to avoid low-hanging ceilings, a warning which, incidentally, Bachman ignored. Although Carney's men helped in the loading of the machinery, Bachman directed the job, instructing the men where to place the cumbersome cargo and he himself chained it to the flat bed of his vehicle.

The record shows quite clearly that Bachman was a regular employee of McDermott's and that both the truck and driver had been leased to Carney for the specific purpose of transporting the gear hobber. The lower court pointed out similar leasing arrangements had been entered into between the parties in February, April and May, 1961. "These previous transactions are a factor to be considered in determining whether Bachman became the servant of Carney. The Restatement (2d), Agency, §227, comment c says: 'Factors to be considered. Many of the factors stated in Section 220 which determine that a person is a servant are also useful in determining whether the lent servant has become the servant of the borrowing employer. Thus a continuation of the general employment is indicated by the fact that the general employer can properly substitute another servant at any time, that the time of the new employment is short, and that the lent servant has the skill of a specialist.' "

In *Pa. Smelting & Refining Co. v. Duffin,* 363 Pa. 564, 567, this Court said: "Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, since he is engaged in the very occupation for which he was originally so employed."

The appellant argues that the question of agency was one of law for the court to decide but it is not a question exclusively for the court when the facts are in dispute. *McGrath v. E. G. Budd Mfg. Co.,* 348 Pa. 619.

Finally the appellant contends that the question of damages was not properly submitted to the jury. The record fails to show any error in this respect, nor was there any trial error of any other kind to warrant a new trial.

Judgment affirmed.