**GLENS FALLS INSURANCE COMPANY, Plaintiff,**

v.

**Darrell G. CRADLEBAUGH, an Individual, and E. W. Allison, an Individual, Defendants.**

**Civ. No. 65–367.**

United States District Court
W. D. Pennsylvania.

Aug. 11, 1966.

Raymond G. Hasley, of Rose, Schmidt & Dixon, Pittsburgh, Pa., for plaintiff.

Joseph F. Weis, Jr., of Weis & Weis, Pittsburgh, Pa., for defendants.

OPINION AND ORDER

MARSH, District Judge.

This diversity action was initiated as a jury trial[1] by Ohio Fast Freight,

1. At pretrial conference the parties stipulated that the case be tried to the court without a jury.

Inc. (Ohio), plaintiff, against Darrell G. Cradlebaugh and E. W. Allison, defendants, for indemnity or contribution involving the sum of $65,000 paid by Glens Falls Insurance Company (Glens Falls), Ohio's insurance carrier, to the estate of the deceased victim of a motor vehicle accident. Counsel for Ohio also represented Glens Falls (T., p. 6). Counsel for Allison also represented Nationwide Mutual Insurance Company, his insurance carrier (T., p. 8). The appearance entered for the defendant Cradlebaugh by Weis and Weis, attorneys, was withdrawn pursuant to motion and order of court. No answer was filed on behalf of Cradlebaugh, but the other parties stipulated that no judgment by default should be entered against him. At the pretrial conference, because it seemed that the real contest was between the respective insurers, the parties were requested to negotiate with respect to an amendment bringing into the case the insurers of Ohio and Allison and report to the court. The request was not acted upon.

At trial, it appeared from the Pretrial Stipulation, § IV, ¶ 29 (see Appendix), and the admission of counsel (T., p. 15), that Ohio's insurer, Glens Falls, had paid the entire amount in controversy in settlement of the suit brought in the state court against Ohio. Thereupon, the court again proposed that the parties consider substituting the insurance companies as the litigants, and voiced its opinion that since Glens Falls was the real party in interest, if it were not substituted as plaintiff, pursuant to Rule 17(a), Fed. R.Civ.P. (see also, Rules 8(a) (2) and 21), in place of Ohio, who had not sustained any monetary loss, that judgment should be entered in favor of the de-

fendants. After extensive consideration by counsel and the court (T., pp. 1–9, 69–82), it was finally agreed that Glens Falls be substituted as plaintiff in place of Ohio and that Allison and Cradlebaugh remain as defendants (T., pp. 80, 82).[2]

The court adopts the facts stipulated by the parties in their Pretrial Stipulation. Upon consideration of these facts, the testimony adduced at the non-jury trial, oral argument,[3] and the briefs, it is the opinion of the court that judgment should be entered in favor of the defendants and against Glens Falls, the substituted plaintiff.

Pursuant to the terms of the lease[4] entered into between Ohio and Allison, the owner of the tractor-trailer, at the time of the accident on November 23, 1963, the leased equipment was in Ohio's "exclusive possession, control, use and responsibility" (see lease, ¶ 2). No breach or termination had occurred within the meaning of ¶ 3 of the lease, although Cradlebaugh had delivered his cargo to the U. S. Gypsum Company in Staten Island, New York, and was returning empty to New Castle, Pennsylvania, where Allison's garage was located, and "where the truck [tractor-trailer] was customarily kept when not hauling a load for Ohio * * *".[5] The driver, Cradlebaugh, and the equipment were still in the exclusive service of Ohio. Plaintiff did not prove any breach of the lease on the part of Allison. The fact that Allison intended to change the tires on the vehicle after its arrival in New Castle is irrelevant.

Under the Union contract, accepted by Ohio in August, 1963, Cradlebaugh at the time of the accident was exclusively the employee of Ohio. At that time Ohio had the exclusive right to

---

2. Diversity jurisdiction exists between the plaintiff, Glens Falls, a New York corporation with its principal place of business other than in Pennsylvania (T., pp. 8–9, 82), and the defendants, Allison and Cradlebaugh, both citizens of Pennsylvania at the time suit was brought (Pretrial Stipulation, § III).

3. T., pp. 168 to end.

4. This lease is referred to as joint exhibit 1, which was not attached to the Pretrial Stipulation as represented therein, but is attached to the defendant Allison's pretrial narrative statement.

5. Pretrial Stipulation, § IV, ¶ 22; T., pp. 152, 157–158.

control him with respect to the manner, means, and details of driving the leased equipment.[6] Allison acquiesced in that employment (T., pp. 57, 61, 98–99, 102–104, 117–118). Only when the equipment would be in Allison's garage at New Castle or at some other place where Allison resumed actual possession to make repairs could Cradlebaugh come under the direction and control of Allison.

Even if effect is given to ¶ 12 of the lease,[7] and, as between Ohio and Allison, to the presumption, urged by plaintiff,[8] that Cradlebaugh remained in the control of the owner rather than shifting to the control of the lessee (although the asserted presumption seems to be overwhelmingly overcome by evidence that Ohio in fact had the exclusive right to control the driver and the manner, means and details of his performance of Ohio's work), the plaintiff insurance company is liable nevertheless for the damages which resulted from the accident. The insurance policy (defendant's Ex. C)[9] issued by plaintiff to Ohio provided coverage for the liability of the driver of hired vehicles, as well as any person legally responsible for the use thereof, when engaged in the exclusive business

---

6. See T., pp. 45–50, 55–57, 98–99, 102–104, 117–118, 140.

7. Paragraph 12 provides in part: "The relationship between the CARRIER and OWNER shall be that of Independent Contractor and the employees of one party shall not be considered employees of the other party."

8. Plaintiff cites in support of the presumption Stine v. Borst, 205 Pa.Super. 46, 205 A.2d 650 (1964); White v. Morris, 182 Pa.Super. 454, 127 A.2d 748 (1956); Mature v. Angelo, 373 Pa. 593 (1953); Pennsylvania Smelting & Refining Co. v. Duffin, 363 Pa. 564, 70 A.2d 270, 176 A.L.R.2d 1384 (1950); Phoenix Insurance Co. v. McDermott Brothers Co., 416 Pa. 569, 208 A.2d 245 (1965).

9. The pertinent provisions are:
"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, for Property Damage Liability and for Automobile Medical Payments applies with respect to all owned automobiles and hired automobiles, and the use, in the business of the named insured, of non-owned automobiles, subject to the following provisions:
"1. *Definition of Insured.* As respects such insurance, Insuring Agreement III, Definition of Insured, is replaced by the following:
"With respect to the insurance for Bodily Injury Liability and for Property Damage Liability the unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of a non-owned automobile. The insurance with respect to any person or organization other than the named insured does not apply:
"(a) except with respect to an employee of the named insured, to any person or organization, or to any agent or employee thereof, engaged in the business of transporting property by automobile for the named insured or for others, with respect to any automobile of the commercial type (1) unless the accident occurs while such automobile is being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority * * *, provided, however, a driver or other person furnished to the named insured with an automobile hired by the named insured shall not be deemed an employee of the named insured;
"(b) * * *
"(c) * * *
"(d) with respect to any hired automobile, to the owner or any lessee of such automobile, or to any agent or employee of such owner or lessee, if the accident occurs (1) while such automobile is not being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority * * *;
"(over)"
Counsel for plaintiff at the trial requested an opportunity to substitute a copy of its original policy, which was offered as defendant's Exhibit C. In so doing, he failed to supply in the photostatic copy the "(over)" page, and the court presumes that it is not relevant. (T., pp. 124, 128, 129).

of Ohio under its authorized Interstate Commerce Commission certificate.

At the time of the accident, the leased equipment, although empty, was in the possession of and on the exclusive business of Ohio, driven by its employee on a route in Pennsylvania authorized by its Interstate Commerce Commission certificate. Before and after delivery of the cargo at Staten Island, Cradlebaugh complied with all instructions of Ohio. No cargo was available for him to transport back to Ohio on the return trip to his home base. On the return trip the equipment was not in the business of service of Allison. Allison's business was leasing trucks,—not interstate transportation. Cf. Walters v. Dunlap, 250 F.Supp. 76, 78–79 (W.D.Pa.1966).[10]

The $65,000 which the plaintiff insurance company paid in settlement of all claims in the action brought in the Court of Common Pleas of Bedford County, Pennsylvania, was within the limit of its policy[11] and was its legal obligation.

The insurance policy issued by Nationwide Mutual Insurance Company to Allison (defendant's Ex. B) was admitted in evidence only to show that Allison complied with the terms of the lease (T., pp. 96–97). Even if the policy had been admitted generally, it is doubtful that defendants were entitled to coverage for the fatal accident. (See Allison's Amended Request for Findings of Fact, No. 35, received August 9, 1966.)

This opinion shall be deemed to embody findings of fact and conclusions of law required by Rule 52, Fed.R.Civ.P., 28 U.S.C.A.

An appropriate order will be entered.

## APPENDIX
## PRE–TRIAL STIPULATION

It is stipulated between the parties that:

### I.

This is an action for indemnity or contribution and damages for breach of contract in connection with a motor vehicle accident that happened November 23, 1963 in Bedford County, Pennsylvania and a compromise settlement made by plaintiff in regards thereto.

### II.

The contested issues are:

(a) Whether defendant E. W. Allison is liable, either solely, or jointly with plaintiff, for the negligence and liability of defendant Darrell G. Cradlebaugh arising out of or in connection with the accident.

(b) Whether plaintiff is entitled to damages for breach of contract by defendant E. W. Allison, for failure to insure and/or properly protect plaintiff against the claims of third persons occasioned by the negligence of Allison or defendant Darrell G. Cradlebaugh.

(c) Whether Cradlebaugh, the tortfeasor primarily liable, was covered by the insurance policy furnished by plaintiff through the Glens Falls Insurance Company.

(d) Whether E. W. Allison did breach the lease agreement, although he paid for liability coverage with the Nationwide Insurance Company.

### III.
### *Jurisdiction*

At the time of the commencement of this action and at present plaintiff Ohio Fast Freight, Inc. was and is a corporation incorporated under the laws of the State of Ohio, with its principal place of business in Ohio. Defendant E. W. Allison was and is an individual and citizen of the Commonwealth of Pennsylvania and of the United States, residing at 1801 New Butler Road, New Castle, Lawrence County, Pennsylvania.

At the time the motor vehicle accident happened, defendant Darrell G. Cradlebaugh was the driver of a vehicle involved in the accident and at that time he was an individual and citizen of the Commonwealth of Pennsylvania and of the United

---

10. An appeal is pending.

11. The limit of plaintiff's policy appears to be $2,000,000.

States, residing at 2201 New Butler Road, New Castle, Lawrence County, Pennsylvania.

The amount in controversy exceeds $10,000.00.

## IV.

The following facts are stipulated and require no proof:

(1) Plaintiff Ohio Fast Freight, Inc. is and has been engaged generally in the transportation of goods, wares and merchandise in interstate commerce by a motor vehicle under and in accordance with a duly issued certificate of and from the United States Interstate Commerce Commission, and Ohio Public Utility Commission No. 9533–IX

(2) The Interstate Commerce Commission number for plaintiff Ohio Fast Freight, Inc. is MC–14702, and PUC No. 9533–IX

(3) Plaintiff Ohio Fast Freight, Inc. maintains and has maintained a freight terminal and office at Warren, Ohio which is and has been its principal place of business. Generally, plaintiff in conducting its business, leases some tractors and trailers from other persons.

(4) Defendant E. W. Allison is engaged in the business of leasing tractors and trailers to persons such as plaintiff. Generally, in the industry, persons such as Allison are called owner-operators.

(5) Defendant E. W. Allison does not have and did not have an Interstate Commerce Commission franchise or Public Utility Commission franchise.

(6) Defendant E. W. Allison owned a certain 1957 model B–61 Mack tractor and 1963 Dorsey 35 foot flatbed trailer, both of which could be used for hauling freight in plaintiff's business.

(7) In December, 1962 defendant E. W. Allison entered into a written lease with plaintiff, Ohio Fast Freight, Inc. by which Allison leased the aforesaid Mack tractor to plaintiff.

(8) A copy of the lease agreement between plaintiff Ohio Fast Freight, Inc. and defendant E. W. Allison is annexed hereto, identified as Joint Exhibit 1 and incorporated herein by reference. This agreement was prepared by Ohio Fast Freight, Inc.

(9) In April, 1963, defendant E. W. Allison entered into a written lease agreement with plaintiff, Ohio Fast Freight, Inc. by which Allison leased the aforesaid Dorsey trailer to plaintiff. The form of the lease is identical to Joint Exhibit 1 and sets forth no terms at variance therewith.

(10) In April, 1963, defendant E. W. Allison hired defendant Darrell G. Cradlebaugh as an employee of defendant E. W. Allison to drive the Mack tractor leased to plaintiff.

(11) The tractor had attached to its door a decal reading "Operated by Ohio Fast Freight, Inc.—Warren, Ohio" and listing the motor carrier number granted to plaintiff by the Interstate Commerce Commission, and the number granted by the Ohio Public Utility Commission.

(12) As a remuneration for lease of the equipment, plaintiff Ohio Fast Freight, Inc. paid defendant E. W. Allison a stated percentage of the freight revenue derived from the use of the equipment in hauling freight.

(13) From April, 1963 to August, 1963, wages due defendant Darrell G. Cradlebaugh were paid to him by defendant E. W. Allison.

(14) In August, 1963, the Teamsters Union entered into a collective bargaining agreement with plaintiff Ohio Fast Freight, Inc., providing for certain terms and conditions of employment, including wages and applying to certain persons. The bargaining unit included drivers employed by plaintiff and in addition, drivers previously employed by owner-operators; this included defendant Darrell G. Cradlebaugh as a driver originally hired by defendant E. W. Allison.

(15) A copy of the collective bargaining agreement between the teamsters and plaintiff Ohio Fast Freight, Inc. is annexed hereto, identified as Joint Exhibit 2 and incorporated herein by reference.

(16) Under the terms of the collective bargaining agreement, plaintiff agreed

to pay the wages of all drivers including those theretofore hired and employed by owner-operators. Thereafter, beginning in August, 1963 the wages of defendant Darrell G. Cradlebaugh were paid by plaintiff, Ohio Fast Freight, Inc. Plaintiff deducted those wages and any other appropriate charges against the amount due defendant, E. W. Allison, for rental of the equipment, by decreasing the stated percentage formerly paid Allison.

(17) After August, 1963 and through and after November, 1963, Ohio Fast Freight withheld income tax for Cradlebaugh, as well as social security, and paid workmen's compensation premiums to the Ohio Industrial Commission on behalf of Cradlebaugh.

(18) At the instructions of an Ohio Fast Freight dispatcher, a load of material shipped by U. S. Gypsum Company of Warren, Ohio and destined for the same company at Staten Island, New York, was loaded on Allison's trailer and defendant Darrell G. Cradlebaugh, driving Allison's tractor, departed with the trailer for Staten Island on Thursday, November 21, 1963.

(19) Generally, the Mack tractor and Dorsey trailer were used to haul freight between Warren, Ohio and cities in the East. Ohio Fast Freight operated other terminals beside that at Warren, Ohio and, in addition, maintained telephone call stations at various cities where it did not maintain terminals.

(20) At the instructions of a dispatcher for Ohio Fast Freight, a load of material shipped by U. S. Gypsum Company at Warren, Ohio and destined for the same company at Staten Island, New York, was loaded on Allison's tractor and defendant Cradlebaugh, driving Allison's tractor, departed with the trailer for Staten Island on November 21, 1963 (a Thursday).

(21) The freight to U. S. Gypsum Company was unloaded that Friday afternoon, November 22, 1963 at approximately 4:30 P.M. Thereafter Cradlebaugh went to the plaintiff's terminal in Nixon, New Jersey, and arrived there about 5:30 P.M. He found that the dispatcher had gone home.

(22) Cradlebaugh then slept until approximately 3:00 A.M., November 23, 1963 and started West toward New Castle where Allison's garage was located and where the truck was customarily kept when not hauling a load for Ohio Fast Freight.

(23) On Saturday, November 23 at about 11:30 A.M., while defendant Darrell G. Cradlebaugh was driving the equipment enroute West, he was involved in an accident on Route 220 in Bedford County, Pennsylvania. The accident happened while Cradlebaugh was proceeding around a downhill curve on wet pavement and the equipment jackknifed, causing a severe collision with a motor vehicle coming in the opposite direction.

(24) For purposes of this litigation, it is stipulated that the accident was caused by the negligence of defendant, Darrell G. Cradlebaugh, who was primarily liable.

(25) The other motor vehicle was owned and operated by a Walter J. Lafferty who suffered fatal injuries in the accident. His automobile also was damaged.

(26) Ohio Fast Freight has an irregular route certificate from the I. C. C. so that in traveling through Pennsylvania to or from Warren, Ohio on authorized business equipment is authorized to travel upon any highway.

(27) Plaintiff agreed upon a compromise settlement of all claims in the action and the Court of Common Pleas of Bedford County entered an Order approving the compromise and settlement. The settlement provided for the termination of any and all claims against defendant Darrell G. Cradlebaugh, defendant E. W. Allison and plaintiff herein, but specifically reserved to plaintiff any and all claims for indemnity and/or contribution or other claims that plaintiff had or could have against Cradlebaugh and/or Allison.

(28) Plaintiff paid the sum of $65,-000.00 in compromise and settlement of the claims. The amount of the settlement

was fair and reasonable and is not contested.

Plaintiff contests the relevancy of but stipulates to the accuracy of the following:

(29) Plaintiff had in effect public liability insurance with Glens Falls Company which actually paid the loss.

(30) Defendant Allison had procured and paid the premiums on a policy with Nationwide Insurance Company.

### V.

The names of possible witnesses have been disclosed heretofore in the Pretrial Statements. The deposition of defendant, Darrell G. Cradlebaugh was taken on December 17, 1965.

### VI.

Possible issues of law:

1.  Under the terms of the lease agreement (Joint Exhibit 1) as between plaintiff Ohio Fast Freight, Inc. and defendant E. W. Allison, did defendant Darrell G. Cradlebaugh remain solely an employee of Allison after August, 1963 when plaintiff commenced paying the wages of Cradlebaugh under the terms of the collective bargaining agreement (Joint Exhibit 2).

2.  If defendant Darrell G. Cradlebaugh did not remain solely an employee of defendant E. W. Allison (as between Allison and plaintiff) after August, 1963, did Cradlebaugh become an employee of both plaintiff and Allison?

3.  At the time of the accident was the tractor-trailer being operated in the service of plaintiff, Ohio Fast Freight, Inc.?

4.  At the time of the accident was the tractor-trailer being operated in the service of defendant E. W. Allison.

5.  At the time of the accident was defendant Darrell G. Cradlebaugh acting within the scope of employment for:

(a) Defendant E. W. Allison.

(b) Plaintiff Ohio Fast Freight, Inc.

(c) Mutual benefit of both Allison and plaintiff.

Defendant feels that the following matters are in issue but the plaintiff disagrees:

6.  Did the Glens Falls Insurance policy provide coverage for Darrell G. Cradlebaugh.

7.  Did the Nationwide insurance policy provide coverage for Cradlebaugh at the time of the accident.